ANGELO SIMONELLI *vs.* BOSTON HOUSING AUTHORITY.

Suffolk. May 9, 1956. — July 19, 1956.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & WILLIAMS, JJ.

*Contract,* Of employment. *Agency,* Scope of authority or employment, Ratification.

A finding of a contract between a housing authority and one of its employees that his employment should continue as long as he was able to perform his work was not warranted on evidence that a project manager and the personnel director of the authority, in advising him not to join a retirement system whereby he would have to retire in a short time, but to waive his right to join, which he did, each told him that he could stay on the job as long as he desired. [440]

Evidence did not warrant a finding that either a project manager or the personnel director of a housing authority had actual or ostensible

authority to contract in its behalf with one of its employees to continue his employment permanently. [440–441]

Ratification by a housing authority of an alleged promise made by a project manager and by the personnel director to an employee of the authority respecting the permanence of his employment could not properly be found in the absence of evidence that the authority had knowledge of such a promise. [441]

CONTRACT. Writ in the Superior Court dated December 3, 1954.

There was a verdict for the plaintiff at the trial before *Morton, J.*

*George F. Mahoney,* for the defendant.

*Haywood W. Corbett,* for the plaintiff.

RONAN, J. These are exceptions of the defendant to the denial of its motion for a directed verdict in an action of contract brought against the defendant for breach of an oral contract alleged to have been made by the defendant with the plaintiff to employ him as long as he was able to perform the duties of his position, in return for the filing by the plaintiff of a waiver of his right to become a member of the Boston retirement system.

The plaintiff was employed as a watchman and maintenance laborer by the defendant from 1942 to January 8, 1953. By St. 1948, c. 507, employees of the defendant were given the privilege of becoming automatically members of the retirement system on a certain date unless before said date they filed a waiver of membership. If the plaintiff became a member he would have to retire when he reached seventy years of age. He was sixty-eight years of age in 1948. If he joined he would get an annual pension of $400 but if he deposited $1,150 in the fund he could get an annual pension of $720. He consulted with one O'Neil, the manager of the project where he was employed. O'Neil advised him not to pay anything into the fund and to sign the waiver of his pension rights. O'Neil told him that he could stay on the job as long as he was healthy, as long as he felt like working, and as long as he desired. He talked with O'Neil frequently until March 18, 1949, when O'Neil gave him a blank form of waiver and told him to see one Donovan,

the personnel director. Donovan gave him the same advice as did O'Neil. The plaintiff testified that Donovan promised that he could stay on the job as long as he liked. He then signed the waiver witnessed by Donovan. There was ample evidence that the plaintiff was discharged for lack of funds on January 8, 1953, by the personnel director and that his action was ratified and approved by the board at its meeting of January 21, 1953.

The plaintiff was confronted with making a decision as to whether it was better for him to join the retirement system and quit his employment when he became seventy years of age or to refuse to become a member by signing the waiver of his privilege of becoming a member and continuing on the job after he became seventy. He sought the advice of both O'Neil and Donovan. O'Neil was manager of one of the projects where the plaintiff worked as a watchman. Dono-- van was personnel director. Both advised him not to become a member of the retirement system and in the course of their remarks, in weighing the advantages of not joining, both stated that he could work after he became seventy, so long as he was able or desired. These remarks of O'Neil and Donovan must be construed in the setting in which they were made. So construed it is hard to see that they constituted a promise of permanent employment. They are hardly more than a bit of friendly advice as to what it was best for the plaintiff to do, in other words, "a hopeful encouragement sounding only in prophecy." *Hall* v. *First National Bank*, 173 Mass. 16, 19. *Pisco-Pausata* v. *Oliver Ditson Co.* 276 Mass. 377, 380. *Phoenix Spring Beverage Co.* v. *Harvard Brewing Co.* 312 Mass. 501, 506. *Manning* v. *Springfield Institution for Savings*, 317 Mass. 480, 484.

If we assume in favor of the plaintiff that a promise of permanent employment might in some way be found from the conversations between the plaintiff and O'Neil or between the plaintiff and Donovan, then the burden is on the plaintiff to show that either one of them had authority to bind the defendant. There is no evidence that either had express or implied authority to make the contract alleged

by the plaintiff. There was no evidence that either O'Neil or Donovan had ever made any contracts of permanent employment with any of the employees of the defendant, or that the defendant held them out as possessing such powers, or that it ever knew that they or either of them attempted to exercise such powers. *Massachusetts Hospital Life Ins. Co.* v. *Nesson,* 286 Mass. 216, 222. *Hurley* v. *Ornsteen,* 311 Mass. 477, 482. *Tortorelli* v. *New York Central Railroad,* 326 Mass. 583, 586–587. There is nothing to support ratification by the defendant of the action of O'Neil or Donovan in dealing with the plaintiff if the jury believed that either agreed to grant him permanent employment in consideration of signing a waiver, in the absence of evidence that the defendant had any knowledge of any promise of O'Neil or Donovan. *James F. Monaghan Inc.* v. *M. Lowenstein & Sons Inc.* 290 Mass. 331, 333. *Kelly* v. *Citizens Finance Co. of Lowell, Inc.* 306 Mass. 531, 533–534. Restatement: Agency, § 91.

Cases involving breaches of contracts for permanent employment have not infrequently been before this court. Many of the cases are collected in *Kirkley* v. *F. H. Roberts Co.* 268 Mass. 246, 252. Some of the cases there cited are relied upon by the plaintiff, but an examination of those cases will show that the question of the authority of the agent was not presented or that there was adequate evidence of the authority of the agent to bind his principal. The instant case resembles *Braden* v. *Trustees of Phillips Academy,* 321 Mass. 53, where it was held that a comptroller had no authority to hire for life an assistant comptroller.

> *Exceptions sustained.*
> *Judgment for the defendant.*